UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **KAYED ALMERAISI**, <br><br> Petitioner, <br><br> v. <br><br> **THOMAS WINN**, <br><br> Respondent. | **4:15-CV-12823-TGB-EAS** <br><br><br> **ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |

Kayed Almeraisi, a state prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Almeraisi was convicted after a jury trial in the Wayne Circuit Court of four counts of first-degree criminal sexual conduct, and three counts of second-degree criminal sexual conduct. M.C.L. §§ 750.520b, 750.520c. He was sentenced to concurrent terms of 16-30 years in prison for each of the first-degree convictions and 3-15 years for each of the second-degree convictions.

Almeraisi raises six claims challenging his convictions: (1) the prosecutor committed misconduct by commenting on Almeraisi's silence in a recorded conversation, (2) insufficient evidence was presented at trial to support the convictions, (3) defense counsel was ineffective for failing to challenge the admission of Almeraisi's recorded conversation with the victim, (4) the charges were time-barred and defense counsel was ineffective for failing to raise a statute of limitations defense, (5) the

1

trial court erred in admitting religious opinion evidence and defense counsel was ineffective for failing to object, and (6) the cumulative impact of errors entitle Almeraisi to relief.

Almeraisi's petition is **DENIED** because the claims are without merit or barred from review by Almeraisi's procedural default of his post-conviction claims. The Court will also deny a certificate of appealability and deny permission to appeal in forma pauperis.

## I.   BACKGROUND

The charges against Almeraisi involved allegations that he sexually abused his daughter for a period of years when she was a young child. The complainant came forward with her allegations years later, when she was an adult and had moved out of the family home.

Raja Almeraisi, who was twenty-one years old at the time of trial, testified that she was Kayed Almeraisi's daughter. She moved with her parents and sister from Yemen to the United States in 1995 when she was four years old. Tr. 5/9/13, ECF No. 8-8, PageID.597-99. Before living in Detroit, her family resided in Buffalo, New York. She remembered her father and mother coming into her room and pulling her pants down while she slept when they lived in Buffalo. *Id.* at PageID.602-04.

Her family moved to a house in Detroit when she was six years old, and Raja recalled an incident when Almeraisi had her remove her pants and touched her buttocks. *Id.* at PageID.606-09. The family later moved

to a different house on Lawndale in Detroit when she was eight years old, and Raja recalled that her father began touching her inappropriately there again. *Id.* at PageID.618-21.

The first incident Raja recalled was being forced by her parents to listen outside the bathroom door while they had sex. *Id.* at PageID.621. On another occasion she was awakened by her mother, who told her to come with her into her parents' bedroom. She was instructed by her father to take off her clothes and get into bed with her parents. *Id.* at PageID.629. He then told her to lay on top of her mother, who was also naked. Her father directed Raja to rub against and kiss her mother while he masturbated. *Id.* at PageID.631-32.

Her father also put his finger in her anus and on her vagina, while her mother performed oral sex on him. *Id.* at PageID.632-34. Raja testified that this occurred about ten times at the Lawndale house. *Id.* at PageID.652.

When she was in sixth grade, the family moved to a house on Trenton in Detroit. *Id.* at PageID.653. Raja stated that the same practice occurred there, but that at some point when she was eleven years old, her father started abusing her without her mother being present. *Id.* at PageID.654. She described one occasion when her father ordered her into his room, and he inserted his finger into her vagina and anus and kissed

her breasts. *Id.* at PageID.662-64. Raja described another event when her father directed her to touch his penis. *Id.* at PageID.664.

Raja testified that the incidents stopped when she was fourteen years old. At that point, Raja said she "had enough," and she yelled at her father to stop or she would go to the police. *Id.* at PageID.669.

Raja left home when she was nineteen. She returned to the house and secretly recorded a conversation between herself and her parents. Tr. 5/13/13, ECF No. 8-9, PageID.703-07. A copy of the recording was transcribed with the Arabic portions of the conversation translated into English. The transcript was presented to the jury. *Id.* at PageID.709-31.

The transcript contains the following exchange[1]:

> Raja: Dad, you know what I'm referring to, right? All these years I'm suffering and keeping my pain within me. Why were you doing this to me what I was a child? You used to force me into the bedroom while you and mother were having sex and force me to do the things to you? Did you forget all this?
>
> Why do you think I have these terrible memories? I have nasty feelings within me towards you, because of what you were doing to me back then. I can't even let you touch me. Don't ever touch me!
>
> I swear to God, you caused me to have psychological issues. Go on, if you want to kill me now, do it. Nobody is stopping you.

---

[1] In the transcript, the participants are noted as "Father, Mother, Raja, and Ahmad." ECF No. 8-14, PageID.1121. Father has been changed to "Almeraisi" here for ease.

4

She used to wake me up and take me to the bathroom with her and take my clothes off!

Almeraisi: Shhhhhh.

Raja: Don't worry, no one can hear anything, or even worse, when you both used to have sex and make me watch.

Almeraisi: Keep your voice down. I don't want anyone to hear anything! It's your mother who used to tell me to do so.

Raja: Mother says you were the one who told you to do so, and now you are saying she is the one who was doing that, not you. I don't care what you are going to do. You can kill me now if you want. All I care about is me letting all my feelings out, which I've been holding within for years. What religion and what law would allow parents to do what you did to me?

Almeraisi: What reminded you of all this now?

Raja: It's been there for the whole of my life. I never forgot it. I've been having nightmares about it for years. What you did to me was a crime.

Almeraisi: Why do you say that? Why don't you look at it from a different angle and think that we were protecting you, because we were afraid you might go out and have sex with someone? Maybe we were mistaken.

Raja: You surely were mistaken.

\*       \*       \*

Almeraisi: Now, you aren't having any appreciation for my love to you!

Raja: And that's how you express your love to me by doing what you did when I was a child? When I was 11 years old,

5

my mother used to wake me up and take me to the room to watch you while you were having sex. You used to force me to do sexual things to her. Don't you remember how you used to finger my ass? I was 11 years old, I knew nothing.

> \*      \*      \*

Almeraisi: What do you want of me now?

Raja: Nothing, absolutely nothing. I need to release the feelings I have within me, and you can do whatever you see fit.

> \*      \*      \*

Almeraisi: So, you are trying to say we don't love you, and you have psychological scars because of what we were doing to you back in time before we moved to this house when we were living in our old house. Now, she says she even hates mentioning our names.

Why now after all these years are you telling me you don't love, because of the things I was doing to you? Why now!

*Id.* at PageID.720-24; *see also* Transcript of Recording, ECF No. 8-14.

Shortly after this recording was made, Raja moved to New York to live with her great-aunt. Tr. 5/13/13, ECF No. 8-9, PageID.738-42.

Special Agent Ted Wolters, from DHS's Child Exploitation Division, testified that on March 24, 2012, he received information from a tip line that Raja accused Almeraisi of physical and sexual abuse. Tr. 5/14/13, ECF No. 8-10, PageID.918-19. He and two detectives from the Detroit Police Department interviewed Raja over the phone in April. *Id.* at

PageID.919. After the interview Wolters obtained a copy of the recording. *Id.* at PageID.924-25.

Following trial, Almeraisi moved for a mistrial on the grounds that the prosecutor used his silence during the recording against him as an admission of his guilt. ECF No. 8-11. The trial court denied the motion, finding that Almeraisi was not silent during the conversation with his daughter. *Id.* at PageID.1071-72.

After he was sentenced, Almeraisi filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel raised two claims:

> I. The prosecutor committed misconduct when it commented on the defendant's silence, thereby shifting the burden of proof, and the court erred in denying the defendant's motion for mistrial which was made following the prosecutor's inappropriate comment, pursuant to the US Const Amends V, VI, XIV; Mich Const 1963, art 1, §§§ 15, 17, 20.

> II. The evidence presented by the prosecutor was insufficient to establish beyond a reasonable doubt that the defendant was guilty of the crimes for which he was charged and convicted, pursuant to US Const Ams V, VI, XIV; Mich Const 1963, art 1, §§ 17, 20.

ECF No. 8-16, PageID.1220. The Michigan Court of Appeals affirmed the trial court in an unpublished opinion. *People v. Almeraisi*, 2014 WL 7157393, at *3 (Mich. Ct. App. Dec. 16, 2014). Almeraisi filed an application for leave to appeal in the Michigan Supreme Court, which

was denied by standard order. *People v. Almeraisi*, 863 N.W.2d 318 (Mich. 2015) (Table).

Almeraisi then filed his habeas petition with this Court. ECF No. 1. After Respondent filed its responsive pleading, Almeraisi filed a motion to stay the case so he could return to the trial court and exhaust additional claims. ECF No. 9. The Court granted the motion. ECF No. 10.

Almeraisi filed a motion for relief from judgment in the trial court that raised four claims:

> I. Defendant is entitled to relief from judgment where his trial and appellate counsel were ineffective for failure to raise a claim that the audio tapes were inadmissible under MRE 901 and MRE 1002; the admission violated defendant's right against self-incrimination and defendant was not privy to the contents of the tapes because no party ever played it for the defendant, pretrial, trial or during direct appeal.

> II. Defendant is entitled to relief from judgment where the CSCII charges are time barred; the amendment to add charges was prejudicial because the surprise caused trial counsel to be ineffective because of the foreclosure on pretrial investigation to defend against the overly stale charges; appellate counsel was ineffective for failure to raise these claims on direct appeal.

> III. Defendant was denied due process and a fair trial where the court impermissibly allowed religious opinion evidence in defendant's trial; trial and appellate counsels were ineffective for failure to preserve this issue at trial and on appeal of right.

IV. Defendant was denied due process by the cumulative effect of prosecutorial misconduct; appellate counsel was ineffective for failure to raise these claims.

*See* ECF No. 15-1, PageID.1484.

The trial court denied the motion for relief from judgment, finding that review of Almeraisi's claims was barred by his failure to establish "good cause" under Michigan Court Rule 6.508(D)(3) for failing to raise the claims on direct review. ECF No. 15-1, PageID.1540-45.

Almeraisi filed an application for leave to appeal in the Michigan Court of Appeals that raised the same claims. The court denied the application for leave to appeal for failure to establish that the trial court erred in denying the motion for relief from judgment. ECF No. 15-1, PageID.1482. Almeraisi applied for leave to appeal this decision in the Michigan Supreme Court, but that court denied relief under Rule 6.508(D). ECF No. 15-2, PageID.1549.

Almeraisi then filed a motion in this court to lift the stay along with an amended petition, and the case was reopened. ECF Nos. 11, 12. The Court interprets the amended petition as raising six total claims: two that were raised in the first petition, and then four that were pursued in his motion for relief from judgment in state court while these federal proceedings were stayed. Respondent filed a responsive pleading, and the case is now fully briefed.

## II.   STANDARD OF REVIEW

Section 2254(d) of Title 28 of the United States Code, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, places strict limits on federal courts' authority to grant applications for a writ of habeas corpus by state prisoners. *Moore v. Mitchell*, 708 F.3d 760, 781 (6th Cir. 2013). Section 2254(d) instructs that federal courts "shall not" grant a habeas petition filed by a state prisoner with respect to any claim adjudicated on the merits by a state court, absent applicability of either of two specific exceptions. The first exception occurs if the state-court judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The second exception applies if the state court judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The statute therefore requires a high degree of deference to state-court rulings and demands those decisions be given the benefit of the doubt. *Renico v. Lett*, 559 U.S. 766, 773 (2010). Fundamentally, § 2254(d) casts federal habeas review as a safeguard against "extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (citation omitted).

10

# III.   ANALYSIS

## a. Comment on Almeraisi's silence

Almeraisi first asserts that the prosecutor committed misconduct by commenting to the jury that he hushed the victim when she confronted him regarding the abuse. ECF No. 11-1, PageID.1331. He asserts that the prosecutor improperly shifted the burden of proof by implying that his failure to explicitly deny the allegations should count against him. *Id.* at PageID.1336. This claim was presented to the Michigan Court of Appeals on direct appeal, and the court found that the prosecutor's arguments were proper:

> [D]efendant argues that the prosecutor improperly shifted the burden of proof by arguing during closing arguments that the jury should pay attention to what defendant did and did not say in a recorded conversation between defendant and the victim. Specifically, the prosecutor argued that when confronted with the victim's allegations of sexual abuse, "[defendant's] response after she finishes this [was] shhhhh. Not [] no, not [] oh my God, what are you talking about?"

> With respect to the first part of the prosecutor's argument regarding what defendant said in response to the victim's allegations—we find that this argument was proper. A transcript of the recorded conversation was admitted in evidence and read to the jury. In closing arguments, attorneys are permitted to argue the facts in evidence and any reasonable inferences arising therefrom. *People v. Thomas*, 260 Mich. App. 450, 454 (2004). The prosecutor did not alter or misstate what the record reflected. Therefore the prosecutor properly argued the facts in evidence to the jury.

With regard to the remaining argument, the prosecutor's statements did not amount to an attempt to shift the burden of proof in violation of the Fifth Amendment. See U.S. Cons., Am. V. The Fifth Amendment does not preclude a prosecutor from commenting on a defendant's silence before any police contact, *Goodin*, 257 Mich. App. at 432, and a prosecutor's comments on a defendant's pre-arrest conduct does not constitute prosecutorial misconduct, *People v. McGhee*, 268 Mich. App. 600, 634-635 (2005). Here, the conversation between defendant and the victim was recorded approximately two years before police involvement in the case. Accordingly, we find that the prosecutor did not improperly shift the burden of proof by commenting on defendant's failure to testify or present evidence. *See People v. Abraham*, 256 Mich. App. 265, 273 (2003).

Further, upon an objection by defense counsel, the trial court instructed the jury to disregard the latter part of the prosecutor's argument concerning what defendant did not say. Jurors are presumed to follow the trial court's instructions. *People v. Unger*, 278 Mich. App. 210, 235 (2008). Therefore, even if any potential prejudice resulted from the latter half of the prosecutor's argument, it was cured by the trial court's sustained objection and jury instruction. *See id*.

*Almeraisi*, 2014 WL 7157393, at *1-2.

This decision did not unreasonably apply clearly established Supreme Court law. "On habeas review, claims of prosecutorial misconduct are reviewed deferentially." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due

process.'" *Id*. (quoting *Darden*, 477 U.S. at 181 (additional citation omitted)). Therefore, a claim of prosecutorial misconduct provides a basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). Moreover, to obtain federal habeas relief on a prosecutorial misconduct claim, the petitioner must show that the state court's rejection of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

Here, as indicated above, the complainant confronted Almeraisi and her mother in a secretly recorded conversation about the sexual abuse before she went to the authorities. Almeraisi was not silent in the face of the accusations. Instead, he first asked the victim to be quiet, so as not to let her siblings hear what he was saying. As the conversation continued, Almeraisi did not deny the allegations. Instead, he attempted to excuse his conduct by claiming: (a) that the abuse was her mother's idea, and (b) that he was only trying to prevent or protect the victim from having sex with other people. ECF No. 8-14, PageID.1125-29. Almeraisi then tacitly admitted that the allegations were true, asking the victim what she wanted him to do now, and stating, "you have psychological

scars because of what we were doing to you back in time," and "[w]hy now after all these years are you telling me you don't love, because of the things I was doing to you?" ECF No. 8-14, PageID.1126.

The prosecutor used the recorded conversation during closing argument as follows:

> I asked you to listen very carefully to that transcript, and follow along as carefully as you could, and to pay attention to the things that are said. And I know I asked you to pay attention to the things that are not said in this transcript. And I ask you to look at this. And when you're looking, notice what Mr. Almeraisi's responses are when Raja is asking him about the abuse that she suffered all that time.
>
> She says, you used to force me into the bedroom while you and mother were having sex and forced me to do things to you. Did you forget all this? Why do you think I have these terrible memories? I have nasty feelings within me towards you, because of what you were doing to me back then.
>
> Her father's response after she finishes this, shhhhh. Not, no, not my God, what are you talking about?
>
> [Here Defense Counsel objects, and court instructs jury to disregard the statement, "he didn't say no, he didn't say...."]
>
> Raja goes on and says, or even worse, when you both used to have sex and make me watch. And his response to that, keep you voice down, I don't want anybody to hear this, or I don't want anybody to hear anything. Pay attention to that transcript. I ask you to go over it again. Go over the details of that conversation.

Tr. 5/14/13, ECF No. 8-10, PageID.1004-06.

14

The argument—including the part stricken by the trial court—was not improper. No reference was made either explicitly or implicitly to Almeraisi's silence after arrest or his failure to testify. Instead, the argument amounted to a comment on the nature of Almeraisi's responses to the complainant's accusations against him. While prosecutors may not misstate the evidence, *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001), or argue facts not in evidence, *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004), they can make arguments based upon the evidence and have "'leeway to argue reasonable inferences from the evidence' during closing arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)). Such was the case here. The prosecutor's argument that Almeraisi's responses could be viewed as an admission was a reasonable inference to draw based on the statements and responses made during the recorded conversation.

In any event, even if the prosecutor attempted to use Almeraisi's failure to deny the allegations when confronted by the victim as evidence, the Supreme Court has held that prosecutors may use a defendant's pre-arrest silence as substantive evidence of his guilt so long as the defendant did not expressly invoke his right to remain silent. *Salinas v. Texas*, 570 U.S. 178 (2013); see also *Abby v. Howe,* 742 F.3d 221, 228 (6th Cir. 2014). Almeraisi was not invoking his Fifth Amendment right to remain silent

during the private conversation with his daughter. That recorded conversation is therefore not protected by the Fifth Amendment, and any comments on Almeraisi's "silence" occurring during that conversation are not categorically prohibited.

Almeraisi relatedly asserts that the prosecutor's argument was a comment on his failure to testify in his own defense and deny the allegations. Prosecutors may not comment on an accused's failure to testify in his own defense. *Griffin v. California*, 380 U.S. 609, 615 (1965). The rule "applies to indirect as well as direct comments on the failure to testify." *United States v. Moore*, 917 F.2d 215, 224-25 (6th Cir. 1990). But Almeraisi's argument is unsupported by the record. The prosecutor did not directly or indirectly comment on Almeraisi's failure to testify. The comments were confined to Almeraisi's statements made to the complainant during the recorded conversation. There were no general comments by the prosecution that could be seen as an indirect reference to the defendant's failure to testify, such as a reference to the fact that the evidence was "unrefuted" or "uncontradicted." *Cf. Raper v. Mintzes*, 706 F.2d 161, 167 (6th Cir. 1983) (finding that "prosecutor's statements constituted improper references to the petitioner's decision not to testify" and that court was "unable to conceive of any other reasonable inference which could be drawn from the prosecutor's comments" when prosecutor repeatedly referred to certain evidence being "uncontradicted or

16

unrefuted" and the petitioner was the only person who could have testified about it).

The rejection of this claim by the Michigan Court of Appeals did not violate any principle of law clearly established by the Supreme Court.

### b. Sufficiency of the evidence

Almeraisi next asserts that insufficient evidence was presented to demonstrate that he committed the offenses. Almeraisi does not contest the technical elements of the offenses such as the age of the victim, her relationship to him, or the sexual nature of the physical contacts. Rather, he asserts that the victim's testimony standing alone without corroborating evidence was constitutionally insufficient to support his convictions. ECF No. 11-1, PageID.1339.

The Michigan Court of Appeals, after reciting the elements of the offenses and the constitutional standard of review, rejected the claim:

> In criminal sexual conduct causes, a victim's testimony may be sufficient to support a defendant's conviction and need not be corroborated. *People v. Brantley*, 296 Mich. App. 546, 551; 823 NW2d 290 (2012); MICH. COMP. LAWS § 750.520h. Here, the victim testified about two separate occasions, when she was under the age of 13, and the defendant put his fingers inside both her anal and vaginal openings, thereby engaging in four separate acts of sexual penetration. See MICH. COMP. LAWS § 750.520a(q). She also testified that defendant touched her breasts on two occasions thereby engaging in two separate acts of sexual contact. See MICH. COMP. LAWS § 750.520a(r). And, finally, supporting defendant's conviction for second-degree criminal sexual contact under MICH. COMP. LAWS §

750.520c(1)(b)(ii), the victim testified that defendant again put his finger in her anal opening on another occasion when the victim was between the ages of 13 and 16. Therefore, we conclude that sufficient evidence was presented supporting all of defendant's convictions for first-and second-degree criminal sexual conduct. Moreover, we conclude that the victim's testimony was, in fact, somewhat corroborated by the recorded conversation between the victim and defendant.

*Almeraisi*, 2014 WL 7157393, at *2-3.

Under clearly established Supreme Court law the standard governing sufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under AEDPA, moreover, a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because *Jackson* claims are "subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Johnson*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Smith*, 565 U.S. at 2); see also

18

*Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court").

As the Michigan Court of Appeals correctly noted, the complainant testified to facts constituting the elements of the charged offense. A victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (collecting cases). In any event, the evidence did not consist of solely the complainant's testimony. Almeraisi's recorded statements also could have been interpreted by the jury as admissions of guilt. To the extent other interpretations are possible, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).

This claim was also reasonably decided by the Michigan Court of Appeals in light law clearly established by the Supreme Court.

### c. Procedural default

Almeraisi's remaining claims were presented to the state courts in his motion for relief from judgment. Respondent contends that these claims are procedurally defaulted because the trial court found that Almeraisi failed to show "good cause" for failing to raise these claims in his appeal of right, as required by Michigan Court Rule 6.508(D)(3).

The Supreme Court has stated that:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a habeas petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).

Further, the Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the

same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under Mich. Ct. R. 6.508(D)." ECF No. 15-2, PageID.1549. The Michigan Court of Appeals denied petitioner's post-conviction appeal in a form order "because the defendant failed to establish that the trial court erred in denying the motion for relief from judgment." ECF No. 15-1, PageID.1482. These orders did not refer to subsection (D)(3), nor did they mention Almeraisi's failure to raise his claims on his direct appeal as their rationale for rejecting his post-conviction appeals. "Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained. [The court] must therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection of [Petitioner's] claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

In rejecting the post-conviction claims, the state trial court specifically found that review was barred by his failure to establish "good cause" under Rule 6.508(D)(3) for failing to raise the claims on direct review. ECF No. 15-1, PageID.1540-45. Because the trial court denied post-conviction relief based on the procedural grounds stated in Rule

21

6.508(D)(3), Almeraisi's claims are procedurally defaulted pursuant to that rule. See *Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007).

Almeraisi contends his post-conviction claims are nonetheless preserved for habeas review because his appellate counsel was ineffective for failing to raise them on direct review. Ineffective assistance of counsel during direct review can result in a showing of "good cause" sufficient to overcome a procedural default. *Martinez v. Ryan*, 566 U.S. 11 (2012). But Almeraisi has made no such showing. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "Th[e] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Almeraisi has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed a substantial appellate

brief with two claims. Almeraisi has not shown that his counsel's strategy in presenting these and not raising others was deficient or unreasonable.

Moreover, as outlined by the State in its answer, none of the claims raised on post-conviction motion were "dead bang winners"—none of them were "clearly stronger" than those originally presented by Almeraisi's appellate counsel on direct review. ECF No. 14, PageID.1451-54, 1458-62, 1465-68, 1470. Almeraisi has therefore failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F.3d 674, 682-83 (6th Cir. 2000).

## CONCLUSION

As all of Almeraisi's claims are without merit or barred by his procedural default, the Court **DENIES** the petition for a writ of habeas corpus. Furthermore, because reasonable jurists would not debate this result, the Court **DENIES** a certificate of appealability. See 28 U.S.C. § 2253(c)(2). Finally, because any appeal would be frivolous, leave to appeal in forma pauperis is **DENIED**. See 28 U.S.C. § 1915(a)(3).

**SO ORDERED**, this 30th day of December, 2020.

BY THE COURT:

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE